**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott M. Archer, | No. CV-20-02458-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| UnitedHealthcare Services Incorporated, *et al.*, | |
| Defendants. | |

At issue is Plaintiff Scott M. Archer's Opening Brief in Support of Judgment on the Administrative Record (Doc. 60, Pl. Br.), to which Defendant and Cross-Claimant Barclay Group Development Services Health Benefit Plan (the "Plan") filed a Response (Doc. 63, Plan Resp.), Defendants and Cross-Defendants UnitedHealthcare Services ("UHC"), UnitedHealth Group, Inc., UnitedHealthcare Life Insurance Company, and All Savers Insurance Company (collectively, "UHC Defendants") filed a Response (Doc. 64, UHC Resp.), and Plaintiff filed a Reply (Doc. 69, Reply). The Court resolves Plaintiff's claims without oral argument. LRCiv 7.2(f).

## I. BACKGROUND

Plaintiff is a participant in the Plan, which is an employer-sponsored health benefit plan governed by federal law under the Employee Retirement Income Security Act ("ERISA"). The employer and sponsor, Barclay Group Development Services, funds the benefits paid under the Plan, and UHC is the Plan's claims administrator. In this role, UHC

interprets the Plan's benefit coverage terms and makes factual determinations with respect to claims for benefits.

Under the terms of the Plan, benefits are paid only for "Covered Health Care Services," which are services "[p]rescribed, ordered, recommended or approved by an authorized health care provider" that are "Medically Necessary" and not subject to an applicable limitation or exclusion. (Doc. 55, R. at AR000091.) A Medically Necessary service is characterized by all of the following:

> [1] In accordance with Generally Accepted Standards of Medical Practice.
> [2] Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for your Sickness, Injury, Mental Illness, . . . disease or its symptoms.
> [3] Not mainly for your convenience or that of your doctor or other health care provider.
> [4] Not more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your Sickness, Injury, disease or symptoms.

(R. at AR000095.) Generally Accepted Standards of Medical Practice are those "based on credible scientific evidence published in peer-reviewed medical literature recognized by the relevant medical community, relying primarily on controlled clinical trials, or, if not available, observational studies from more than one institution that suggest a causal relationship between the service or treatment and health outcomes." (R. at AR000095.) The Plan also provides that the "Claims Administrator reserves the right to consult expert opinion in determining whether health care services are Medically Necessary." (R. at AR000095.)

The Plan excludes "Custodial Care" from coverage, defined as "[n]on-health related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring and ambulating)," or "[h]ealth related services that can safely and effectively be performed by trained non-medical personnel and are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function, as opposed to improving that function to an extent that might allow for more independent existence." (R. at AR000054, 91.)

With regard to inpatient rehabilitation services, which are at issue in this case, the Plan provides benefit coverage for up to sixty days per calendar year of inpatient rehabilitation facility ("IRF") services, if the services are Medically Necessary and no exclusion applies. (R. at AR000027.) Specifically with respect to IRF services, benefits are only available "[i]f the first confinement in [an IRF] was or will be a cost effective option to an Inpatient Stay in a Hospital" and the participant "will receive skilled nursing services that are not primarily Custodial Care." (R. at AR000045.)

The Administrative Record in this case reveals the following. After Plaintiff returned to Arizona from Texas, where he received plasma injections for chronic back pain, he experienced pain, weakness, difficulty walking, and fever, and he was admitted to Banner University Medical Center ("BUMC") in Phoenix on December 14, 2017. (R. at AR002131.) Imaging revealed "C6–C7 and C7–T1 diskitis" and a "phlegmon"—a soft tissue inflammation caused by an infection. On December 15, 2017, he underwent laminectomy surgery and laboratory results confirmed an infection, for which he received antibiotics. (R. at AR002131.)

UHC approved Plaintiff's prior authorization request for admission to BUMC's inpatient Rehabilitation Institute, and Plaintiff was admitted on December 23, 2017. Dr. Anushka Perera, a physical medicine and rehabilitation specialist, oversaw Plaintiff's admission and care to address a lack of bilateral extremity strength. (R. at AR002137.) He was discharged from BUMC's Rehabilitation Institute 28 days later, on January 20, 2018. (R. at AR002137.) He was re-hospitalized at that time for a pulmonary embolism and deep vein thrombosis, and he remained at BUMC until January 26, 2018. (R. at AR002138.)

Before his discharge from BUMC's Rehabilitation Institute, Plaintiff began seeking admission to Shirley Ryan Ability Lab ("SRAL"), another inpatient rehabilitation facility in Chicago, Illinois. On January 11, 2018, SRAL requested prior authorization from UHC for Plaintiff's admission to SRAL for continued inpatient rehabilitation services. (R. at AR000210–16.) Following a coverage review conducted by UHC Medical Director Dr. Leslie Trubow, on January 12, 2018, UHC denied the pre-authorization, finding that

Plaintiff "was not able to make appropriate progress week to week" at BUMC's Rehabilitation Institute and "was considered custodial for rehab," so continued inpatient rehabilitation services were "not medically necessary" under the Plan. (R. at AR000221.) UHC informed Plaintiff that he could be transferred to a skilled nursing facility, which could provide services covered by the Plan, to "see if [he] can make progress" in rehab. (R. at AR000221.)

Plaintiff entered into a self-pay agreement with SRAL for 28 days of inpatient care at a cost of about $131,000 (R. at AR000220) and was admitted on January 28, 2018 (R. at AR001516). Under additional self-pay agreements, Plaintiff remained at SRAL until discharge on March 26, 2018. (R. at AR000395–99.)

On March 6, 2018, Carol Archer, Plaintiff's wife, filed a written appeal to UHC to challenge its January 12, 2018, denial of coverage for IRF services at SRAL. (R. at AR001516–19.) UHC assigned the appeal to an independent physical medicine and rehabilitation physician, Dr. Howard Choi. (R. at AR001511–13.) Dr. Choi noted that the appeal included no clinical records from SRAL, and he thus had no evidence that the care Plaintiff was receiving could not have been provided at a lower level of care, such as in a skilled nursing facility. (R. at AR001512.) Dr. Choi also confirmed that Plaintiff had failed to make appropriate progress at BUMC's Rehabilitation Institute. (R. at AR001512.) Dr. Choi thus determined that Plaintiff had not shown the IRF services at SRAL were medically necessary (R. at AR001512), and UHC upheld the prior denial of coverage on March 20, 2018 (R. at AR001505).

On April 24, 2018, Colleen Bradway, an SRAL nurse, called UHC to file a second appeal, which was submitted to UHC on April 30, 2018. (R. at AR001609, 1474.) Certain clinical records were included with this appeal, including Plaintiff's discharge summary. (R. at AR001469–70.) Dr. Choi reviewed the records and again found Plaintiff could have been effectively treated at a lower level of care, a conclusion he supported by an extensive Peer Review Report. (R. at AR001463–70.) UHC again upheld the prior denial of coverage

on May 23, 2018, and informed Plaintiff that he had exhausted the internal appeals process. (R. at AR001460–61.)

On May 24, 2018, SRAL requested that UHC review the coverage decision again—constituting a third appeal—and submitted extensive clinical records in support of the request. (R. at AR000459, 1610.) Although the Plan provides for only two appeals, UHC voluntarily agreed to review the new medical records and reconsider its decision. (R. at AR000443, 459.) Based on Dr. Choi's review of the new medical records and another extensive Peer Review Report, UHC approved coverage for the first 15 days of Plaintiff's stay at SRAL—through February 12, 2018—and re-affirmed its denial of coverage for the remaining period. (R. at AR000443.) UHC informed Plaintiff of its decision by letter on June 19, 2018, and again notified him that he had exhausted the internal appeals process. (R. at AR000443–52.)

Under the Plan, SRAL had 90 days from the coverage decision to submit a claim to UHC for payment, but filed no claim until December 12, 2018, long past the deadline. (R. at AR000417–18.) UHC voluntarily agreed to disregard the untimeliness of SRAL's claim and prepared an Explanation of Benefits ("EOB") on November 27, 2019, showing that the Plan paid SRAL $35,568 for Plaintiff's care. (AR001678–84.) If SRAL wished to challenge the contents of the EOB, SRAL had 180 days from the date of the EOB, or until May 25, 2020, to appeal it. (R. at AR001681.)

On June 5, 2020, Plaintiff's counsel sent a letter to UHC which was untimely in every aspect. It stated Plaintiff wished to appeal the November 27, 2019 EOB by challenging the basis of UHC's denial of coverage in the June 19, 2018 letter. (R. at AR001692.)

Plaintiff filed this lawsuit on December 21, 2020. (Doc. 1.) In his Opening Brief, filed June 28, 2022, Plaintiff requests that the Court find that his entire stay at SRAL was medically necessary and order reimbursement of the self-payments he made to SRAL. (Pl. Br. at 18.) In its Response, Plaintiff's employer and Plan sponsor—Barclay Group Development Services—states it "stands ready to reimburse [Plaintiff] for covered

expenses" but, under a stop-loss insurance policy with Cross-Defendant All Savers Insurance Company, the Plan is only liable to claims up to $15,000, and amounts in excess of $15,000 must be paid by All Savers. (Plan Resp. at 2.) In their Response, the UHC Defendants ask that the Court affirm the coverage decision and deny Plaintiff's request for relief. (UHC Resp. at 22.)

## II.    LEGAL STANDARD

The parties do not contest that, under the terms of the Plan, UHC had discretion to determine eligibility for benefits. (Pl. Br. at 4; UHC Resp. at 11.) The Court thus reviews UHC's coverage decision for an abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006). The Court may consider only the records available to UHC at the time of decision and included in the Administrative Record. *Id.* at 969–70. The Court may reverse UHC's denial of coverage only if it is left with "a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011). In examining the coverage decision, the Court "may not merely substitute [its] view for that of the fact-finder," and a reversal requires a finding that the UHC's decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.*

Plaintiff's argument that the Court should nonetheless apply a *de novo* standard of review to UHC's coverage decision has neither a sufficient factual basis nor any legal basis. Plaintiff contends that UHC did not timely respond to his June 5, 2020 "appeal" of UHC's November 27, 2019 EOB, but the record shows UHC issued its final coverage decision by way of May 23 and June 19, 2018 letters, which were long before the EOB in question. Even if UHC's coverage decision was appealable by way of an appeal of the EOB, Plaintiff's June 5, 2020 "appeal" was past the 180-day deadline to do so. And even if UHC considered the contents of the June 5, 2020 "appeal" to voluntarily review its coverage decision (for a fourth time), Plaintiff identifies no legal authority for the proposition that such a voluntary review requires a response, within 30 days or otherwise. Finally, even if all of the above were not true and UHC had somehow violated the terms of the Plan by

failing to timely respond to Plaintiff's June 5, 2020 letter, Plaintiff provides no applicable legal authority for the proposition that the Court should then apply a *de novo* standard of review to UHC's coverage decision. For all of these reasons, the Court declines Plaintiff's invitation to apply a *de novo* standard of review here.

## III.   ANALYSIS

The Court finds no basis to conclude that UHC abused its discretion in denying coverage for a portion of Plaintiff's IRF care at SRAL. To begin with, Dr. Trubow and then Dr. Choi provided convincing reasons supported by the medical record to conclude that further IRF care was not medically necessary under the Plan. Principally, they cited Plaintiff's clinical records at BUMC Rehabilitation Institute to conclude that Plaintiff had not made appropriate improvement for IRF care under the MCG Health Care Guidelines— the standard level-of-care guidelines used in the medical profession. (R. at AR000169, 173, 255, 1715–16.) The Court finds no merit to Plaintiff's argument that because Dr. Trubow, UHC's Medical Director, was trained as a pediatrician, she was unqualified to examine the medical records and apply the MCG Guidelines in Plaintiff's case. Moreover, the regulations implementing ERISA require only that UHC "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment" when "deciding an *appeal* of any adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(3)(iii) (emphasis added). UHC met this requirement by contracting with Dr. Choi to address Plaintiff's appeal of the initial coverage denial.

Dr. Choi's finding, twice, that Plaintiff's care at SRAL was not medically necessary was not refuted by the clinical record, because SRAL provided no treatment notes to show, for example, that Plaintiff required at least 15 hours per week of physical therapy, as required in the MCG Health Care Guidelines. (*See* R. at AR001512.) When SRAL ultimately provided adequate treatment records and UHC voluntarily undertook a third appeal of the coverage denial, Dr. Choi gave sufficient reasons supported by the record to find that IRF services were medically necessary from January 28 to February 12, 2018, but not for the balance of Plaintiff's stay at SRAL. (R. at AR000457, 459.) Dr. Choi noted

Plaintiff's progress plateaued by February 12, 2018, he was self-sufficient in bladder catheterizations, and his bowels were regulated. (R. at AR000457.) Moreover, Dr. Choi explained why many aspects of Plaintiff's care could have been accomplished at a lower level of care or in an out-patient facility. (R. at AR000457.) In short, there was nothing illogical, implausible, or without support in Dr. Choi's detailed findings, and they were supported by comprehensive Peer Review Reports.

Additionally, Plaintiff's argument that he was somehow denied a full and fair review of his claim is wholly unsupported by the record. Plaintiff fails to demonstrate how or when UHC failed to meet any requirement of the Plan or ERISA in administering his claim. For all these reasons, the Court finds no abuse of discretion in UHC's denial of Plaintiff's claim for additional coverage for his stay at SRAL, and the Court therefore affirms the coverage denial and denies Plaintiff's and Cross-Claimant's requests for relief (Docs. 32, 40).

**IT IS THEREFORE ORDERED** that, after consideration of Plaintiff's Opening Brief in Support of Judgment on the Administrative Record (Doc. 60) and the Responses and Reply thereto (Docs. 63, 64, 69), the Court affirms UnitedHealthcare Services' coverage denial and denies Plaintiff's and Cross-Claimant's requests for relief in this case.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants UnitedHealthcare Services, UnitedHealth Group, Inc., UnitedHealthcare Life Insurance Company, and All Savers Insurance Company and against Plaintiff Scott M. Archer and Cross-Claimant Barclay Group Development Services Health Benefit Plan. The Clerk of Court may close this matter.

Dated this 7th day of February, 2024.

Honorable John J. Tuchi
United States District Judge

- 8 -